**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| ALICIA JOHNSON BUTLER | CIVIL ACTION NO. 16-1718 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HOME DEPOT U.S.A., INC. AND SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. [1] | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Before the Court are Defendant Home Depot U.S.A., Inc.'s ("Home Depot") "Motion in Limine" (Record Document 60) to exclude Plaintiff Alicia Butler's ("Butler") purported expert, Raymond Green, C.P.A., and Home Depot's "Partial Motion for Summary Judgment" (Record Document 61) seeking to dismiss Butler's claims of past lost earnings and loss of future earning capacity. For the reasons contained herein, Home Depot's "Motion in Limine" and its "Partial Motion for Summary Judgment" are **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Butler alleges that on March 28, 2016 she was a customer at the Home Depot in Lafayette and, while checking out at a register, was struck by a wooden gate that was bumped by a forklift moving through the area, injuring her lower back, neck, and right shoulder. See Record Document 6 at 3. On September 26, 2016, Butler filed the instant lawsuit in the Fifteenth Judicial District Court for the Parish of Lafayette, alleging, among other things, a loss of past earnings as well as impairment of her ability to earn a living in the future. See id. at 4. On December 14, 2016, Home Depot timely removed the lawsuit to this Court, based upon diversity of citizenship. See Record Document 1.

---

[1] The Court granted Butler's "Voluntary Motion to Dismiss" Sedgwick Claims Management Services, Inc. on July 31, 2017. See Record Document 26. Accordingly, Home Depot is the only remaining defendant.

Since the accident, Butler's condition deteriorated. She has suffered a herniated cervical disc and a herniated lumbar disc, allegedly as a result of the aforementioned accident. See Record Document 56. These injuries required two surgeries: (1) an open L5-S1 discectomy and foraminotomy in June 2017 and (2) a C5-6 total disc replacement in August 2017. See Record Document 71-5. Butler is an attorney whose practice consists of approximately half public defender work and the remaining half divided among criminal defense, domestic disputes, and plaintiff personal injury matters. See Record Document 61-3 at 2-3.

In an effort to support her lost wages and loss of future earning capacity claims, Butler provided a one paragraph report from her personal accountant of eight years, Raymond Green, C.P.A. ("Green"), on May 11, 2017. See Record Document 60-3. Butler provided no supporting documentation or data and no expert disclosures therewith; the report simply sets forth Green's status as a certified public accountant and his belief as to the extent of Butler's corporate losses in the year 2016. The entirety of Green's report reads as follows:

> I am a Certified Public Accountant, licensed in the State of Louisiana. I have been an Accountant for a total of forty-eight (48) years. In addition, I have been the tax preparer for Alicia Johnson Butler, both personally and business, for approximately eight (8) years. After a thorough review of all business records and filings, it is my professional opinion that for the year of 2016, Ms. Butler took a loss, through both her personal and business tax filings. More specifically, the Corporate business losses total Eighty Thousand dollars ($80,000), not including her personal tax returns.

Id. at 2. Additionally, Dr. John Sledge, a Board Certified Orthopedic Surgeon, testified at his deposition that Butler was having difficulty working, particularly that she was having trouble with her shoe wear. See Record Document 71-7 at 2. Also, Butler's treating orthopedic surgeon, Dr. Jason Cormier, testified that Butler's pain and surgeries,

including the fact that she required pain medication, affected her work. See Record Document 71-10 at 2. He further stated he does not clear anyone to do anything while they are taking pain medication, "specifically when it's dealing with a high intensity job like being an attorney." Id. But later admitted he gave Butler no work restrictions or limitations outside the typical postoperative recommendations. See Record Document 79 at 2. He also testified that he would not opine as to the anatomical impairment ratings or disability ratings. See id.

Home Depot originally filed the instant motions on August 11, 2017, consistent with the Court's pretrial deadlines and scheduling order. See Record Documents 27 and 28. Subsequent to the filing, Butler moved on August 18, 2017 to continue trial due to her decision to undergo a cervical surgery. See Record Document 35. After a telephone conference on August 30, 2017, the Court granted the motion to continue. See Record Document 45. A new scheduling order was issued, with a deadline for Butler's expert disclosures and reports, pursuant to F.R.C.P. 26(a)(2)(B), on December 11, 2017. See Record Document 46. The scheduling order also set a new deadline for filing Daubert motions for March 12, 2018. See id. In accordance with the updated deadlines, Butler produced expert disclosures on November 27, 2017. See Record Document 60-4. The disclosures, with respect to Green, contain no new or additional documents. Instead, Butler reproduced the same May 11, 2017 report from Green consisting of one paragraph. See id. The remaining disclosures were select medical records from treating providers. See id.

In response to the Court's order filed on March 2, 2018 (Record Document 58), Home Depot again filed its motion in limine and partial motion for summary judgment on

March 12, 2018. See Record Documents 60 and 61. Butler has opposed each motion. See Record Documents 70 and 71. Home Depot, in turn, has replied. See Record Documents 75 and 76. Thus, the motions are ripe for decision.

**LAW AND ANALYSIS**

I.  **Home Depot's Motion in Limine**

Home Depot argues Green should be excluded as an expert because (1) his report cannot meet the standards of reliability and admissibility set forth in Daubert and its progeny and (2) Butler failed to comply with the Federal Rules of Civil Procedure regarding expert disclosures and the Court's scheduling order. See Record Document 60-1 at 3-7. Butler contends Daubert does not apply to the instant matter, and even if it does, Green's report is reliable, claiming Home Depot may attack Green's report at trial on cross-examination and in its argument. Further, Butler asserts an expert may testify without prior disclosure of the underlying facts and/or data upon which he relies, pursuant to Fed. R. Evid. 705. See Record Document 70 at 3-10.

Under Fed. R. Evid. 702, an expert witness "may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The United States Supreme Court, in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 2795 (1993), described a trial judge's

"gatekeeping" role under Fed. R. Evid. 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[2]

In determining whether expert testimony is reliable, a trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid." Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007), citing Daubert, 509 U.S. at 592-93. The Supreme Court has specified several non-exclusive factors to guide courts in making a reliability determination: "(1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review or publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community." Daubert, 509 U.S. at 593-94.

The Daubert reliability analysis is flexible, meaning that "not every Daubert factor will be applicable in every situation." Guy v. Crown Equipment Corp., 394 F.3d 320, 325 (5th Cir. 2004), citing Kumho Tire, 526 U.S. at 151. Accordingly, district courts "have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire, 526 U.S. at 152. The focus of the analysis, however, "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. Ultimately, the party offering the expert must prove by a preponderance of the evidence that the testimony or evidence is reliable. See Johnson v. Arkema, Inc., 685 F.3d 452, 459 (5th Cir. 2012).

---

[2] Although the Supreme Court focused on "scientific" testimony or evidence in Daubert, the Court held in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49, 119 S.Ct. 1167, 1174-75 (1999), that the principles set forth in Daubert apply to all experts, not simply "scientific" experts.

Butler asserts Daubert does not apply to the instant matter, and even if it does, there is more than enough proof of Green's knowledge, experience, and methodology to find his testimony reliable. See Record Document 70 at 10. Although Butler is correct in that the Daubert inquiry is fact specific and not every factor will be applicable in every situation, she fails to cite any authority to support her claim that the entire Daubert analysis is inapplicable in this matter. Contrary to Butler's assertion, in a case involving almost identical facts, this court applied the Daubert factors in excluding the testimony of plaintiff's accountant. See Saucier v. State Farm Mut. Auto. Ins. Co., 2016 WL 8200612 (W.D. La. July 18, 2016) (Drell, C.J.). There, the plaintiff was a plaintiff attorney, like Butler herein, who claimed lost wages following a vehicular accident. See id. at 1. The plaintiff's accountant calculated the plaintiff's average gross fee per hour in an effort to quantify the wage loss. See id. at *2. The court, finding that the accountant failed to meet the standards set forth in Daubert as to reliability, granted the motion in limine excluding the testimony and opinions of the accountant. See id. at *2-3. Accordingly, the Court finds Daubert clearly applicable in this matter.

Butler states "there is more than enough proof of Green's knowledge, experience, and methodology" in the record to find his testimony reliable. See Record Document 70 at 10. However, Butler has failed to prove how Green's expert report is reliable in any way. Green's report does not articulate what method, if any, he used to reach his conclusion. Instead, he simply states that he conducted "a thorough review of all business records and filings" without explaining what the documents encompassed or what his review entailed. See Record Document 60-3 at 2. Butler argues Home Depot can point out "[its] argued flaws and deficiencies of Mr. Green's report both on cross-examination,

and in argument to the jury." Record Document 70 at 2. However, Butler cites no legal authority to support her argument; and, further, the Court notes its gatekeeping role under Fed. R. Evid. 702 to ensure all expert testimony be reliable. See Daubert, 509 U.S. at 589. In determining whether Green be allowed to testify at trial, the Court's analysis "must be solely on principles and methodology, not on the conclusions they generate." Id. at 595. The Court cannot focus on the methodology when there is none. Put simply, Green's report offers no factual or analytical support whatsoever.

Although not entirely clear, it appears that Butler argues Green's "methodology" is reliable because "the materials relied upon by [Green] are of the type reasonably relied upon by experts in their respective fields." Record Document 70 at 4. However, mere assurances that an expert has utilized generally accepted scientific methodology are insufficient. See Saucier, 2016 WL at *3, citing Brown v. Illinois Cent. R. Co., 705 F.3d 531, 536 (5th Cir. 2013). Some objective, independent validation of the expert's methodology is required to satisfy Daubert. See id., citing Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The Court also reiterates that the burden is on Butler to prove by a preponderance of the evidence that Green's testimony and evidence is reliable. She has failed to prove such. After considering the Daubert analysis and the facts of this case, the Court finds Green's "methodology" to be unreliable.[3] Accordingly, all evidence and testimony presented by Green pertaining to Butler's lost wage and loss of earning capacity claims must be excluded. Home Depot's "Motion in Limine" is **GRANTED**.

---

[3] Since the Court finds Green's report inadmissible under Ref. R. Evid. 702, the Court will not address Home Depot's argument that said report is inadmissible pursuant to Fed. R. Civ. P. 26(a)(2)(b). See Record Document 60-1 at 5.

## II. Home Depot's Partial Motion for Summary Judgment

### A. Summary Judgment Standard

Rule 56 of the F.R.C.P. governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record, including . . . affidavits . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1)(A) and (B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See Celotex, 477 U.S. at 325, 106 S. Ct. at 2554; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only

"some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075.

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

### B. Butler's Claims of Past Lost Wages

This is a diversity action; therefore, Louisiana substantive law applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 823 (1938). To recover past lost wages under Louisiana law, "a plaintiff must prove positively that he would have been earning the wages but for the accident in question." Boyette v. United Servs. Auto. Ass'n, 783 So. 2d 1276, 1280 (La. 2001). Even though past lost wages are susceptible of mathematical calculation, a plaintiff is only required to provide proof to reasonably establish the claim. See Rhodes v. State Through Dep't of Transp. & Dev., 684 So. 2d 1134, 1147 (La. App. 1 Cir. 12/20/96). However, a plaintiff cannot simply allege past lost wages without independent support of the claim. It is ultimately the plaintiff's burden to prove that past lost wages resulted from the accident in question. See ANMAC Found. Inc. v. St. Patrick Hosp. of Lake Charles, 594 So. 2d 951, 956 (La. App. 3 Cir. 2/12/92).

Here, Butler has offered no admissible evidence of past lost wages. As discussed above, Butler hired Green in an attempt to prove her past lost wages and loss of earning capacity claims. The Court has ruled that the testimony and evidence provided by Green is inadmissible under Fed. R. Evid. 702 because it was based on a faulty methodology.

Even assuming Green's testimony was admissible, Butler has not put forth any evidence that establishes what she would have made but for the accident. Green's report simply stated that Butler sustained an $80,000 loss in her "business earnings" for the 2016 year. See Record Document 61-4 at 2. His opinion is not a reflection of the losses purportedly sustained by Butler personally; nor does he analyze a change in earnings with respect to the date of the accident. "It is well established under Louisiana case law that a corporation has no claim against a tortfeasor for the corporation's lost profits or other consequential damages that result from injury to the corporation's employee." Fuller v. United States, 2001 WL 699036, *2 (E.D. La. 2001).[4] Accordingly, a change in business or corporate earnings of Butler's private law practice is not reflective of her lost wages as an individual, especially since Butler has stated her private law practice only constitutes half of her work as an attorney. See Record Document 61-3 at 2-3.

Therefore, the Court finds there is no genuine dispute of material fact on Butler's past lost wages claim; and thus, summary judgment is proper. Home Depot's motion is **GRANTED** on this issue.

### C. Butler's Claim of Loss of Future Earning Capacity

In Louisiana, damages for loss of earning capacity may be awarded to a plaintiff on the theory "that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily." Folse v. Fakouri, 371 So. 2d 1120, 1124 (La. 1979). Awards for loss of earning capacity are inherently

---

[4] Butler has not disclosed the corporate status of her private law practice, Alicia J. Butler and Associates, APLC, for tax purposes. Importantly, Butler has never claimed that her practice is an "S" corporation. An "S" corporation is a corporation whose income is taxed through its shareholders rather than through the corporation itself. See S CORPORATION, Black's Law Dictionary (10th ed. 2014). Accordingly, shareholders account for all income, gains, losses, deductions and credits.

speculative and intrinsically insusceptible of being calculated with mathematical certainty. See Daigle v. U.S. Fid. & Guar. Ins. Co., 655 So. 2d 431, 442 (La. App. 1 Cir. 5/5/95). Such damages are generally calculated on the person's ability to earn money rather than on what he actually earned before the injury. See Hobgood v. Aucoin, 574 So. 2d 344, 346 (La. 1990). To obtain an award for loss of earning capacity, "a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." Aisole v. Dean, 574 So. 2d 1248, 1252 (La. 1991).

Butler has failed to introduce sufficient evidence into the record that shows such a disability. In an attempt to provide such evidence, Butler produced the deposition testimony of two physicians, Dr. John Sledge and Dr. Jason Cormier. Although both doctors testified that Butler indicated she is having difficulty with work (Record Document 71-8 at 2; Record Document 71-10 at 5), Butler fails to show how the purported "difficulty" rises to the level of a disability. In fact, Dr. Cormier gave Butler no work restrictions or limitations outside the typical postoperative recommendations. See Record Document 79 at 2. He also testified that he would not opine as to the anatomical impairment ratings or disability ratings. See id. The only "difficulty" the Court found which could perhaps hinder her ability to work as an attorney was Butler's highly speculative allegation that she might have to "change her shoe wear in order to make things easier for her cervical spine and her lumbar spine." Record Document 71-8 at 2. However, Butler has not provided any evidence to support her conclusory allegation that a "change of shoe wear" would render her unable to perform, or cause her difficulty in performing, various tasks associated with

a plaintiff's attorney. See Saucier v. State Farm Mut. Auto. Ins. Co., 2016 WL 3977253, *2 (W.D. La. July 20, 2016). In fact, Butler fails to even mention this "difficulty" in her brief.

Butler has not provided any evidence that she is required to wear certain shoes to perform her duties as an attorney, and that her inability to do so would hinder her performance as an attorney. For example, if Butler's law firm enforced a dress code requiring her to wear heels when meeting with clients or appearing in court, or if a court required certain footwear to be worn when appearing, then there could be a genuine dispute as to whether her difficulty would in fact render her unable to perform her required tasks. But, Butler fails to introduce any evidence of the sort. As such, her unsubstantiated assertion is insufficient to meet her burden of proving that a genuine issue of material fact exists as to her inability to work as an attorney. See Little, 37 F.3d at 1075. Thus, Home Depot's motion as to Butler's loss of earning capacity claim is **GRANTED**.

## CONCLUSION

The Court finds Green's report to be unreliable. Accordingly, all evidence and testimony presented by Green pertaining to Butler's lost wage and loss of earning capacity claims must be excluded. Home Depot's "Motion in Limine" (Record Document 60) is **GRANTED**. Additionally, there is no genuine dispute as to any material fact regarding Butler's claims of past lost wages and loss of future earning capacity. Therefore, Home Depot's "Partial Motion for Summary Judgment" (Record Document 61) is **GRANTED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 23rd day of April, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT